ledge, and the implied approbation, of that branch of the
government, by whom they are appointed. (g)

BY THE COURT, HILLHOUSE, MILLER, and AUSTIN,
*Assts.* dissenting,

The judgment was affirmed.

(g) The sheriffs, in Connecticut, are appointed by the Governor
and Council,—the same persons of whom this Court is composed. R.

## Bulkley v. Storer.

### In the Court below,

NATHANIEL STORER, *Plaintiff;* JOHN BULKLEY, and LOCK-
WOOD DE FOREST, *Defendants.*

THIS was an action on the case.

The declaration stated, that in November, 1804, the plain-
tiff was extensively engaged in trade, and in the business
of ship-building, by which he acquired great profit. Being
in want of $ 4000, he applied to his friend, and brother-in-
law, *James Bontecou,* and obtained of him the loan of that

A. being a
man of re-
sponsibility,
and engaged
in extensive
business, bor-
rowed of B.
his brother-
in-law, a sum
of money, and as security, conveyed to him, by an absolute deed, a valuable real
estate, which, according to the understanding of both, was to be re-conveyed on
payment of the money borrowed. C. and D. at this time, formed a conspiracy
against A. to ruin him in his business ; and, in pursuance of such conspiracy, ap-
plied to him, and proposed to loan him a further sum, of which he was in want,
and pay the debt to B. and to hold the property conveyed to B. as security for both
sums. They then went to B. and falsely and fraudulently told him, that they had made
the proposed advances to A. in consequence of which B. conveyed said real estate
to them. They then represented to the creditors of A. that he was a bankrupt,
and advised them to attach his property, in consequence of which, his ruin was
accomplished.—Held, that A. was entitled to recover against C. and D. in an ac-
tion on the case.

The *gist* of such action being *tort*, the declaration will not be held ill, especially
after verdict, because the tort is stated to have been effected by means of a *contract.*

In such action, the agreement between A. and B. though by parol, may be proved,
notwithstanding the statute of frauds and perjuries.

In such action, it is no objection to the competency of a witness for the plaintiff, that
he claims the real estate alleged to have been fraudulently obtained by the defendants

sum. To secure the payment of it, the plaintiff gave his promissory note to *Bontecou*, and also conveyed to him two pieces of land, of the value of $ 16,000, relying wholly on the honour of *Bontecou* to convey the same to the plaintiff, upon payment of the money. *Bontecou* himself had the same understanding of the transaction, and intended to act conformably thereto. The plaintiff was afterwards in want of a further sum of money to enable him to meet some demands of a pressing nature, and to carry on his business ; and the defendants, being well acquainted with the facts above stated, applied to him, and proposed to him, that they would loan him $2000, and pay the debt to *Bontecou*, and would hold the property conveyed to *Bontecou* as security for both sums. They added, that they expected a large sum of money from the country. The plaintiff, in consequence of this proposal and representation, made no other arrangements for money. The defendants then went to *Bontecou*, and told him, that they had complied with the proposal which they had made to the plaintiff, and requested of *Bontecou* a deed of the property ; which, having been previously informed of the arrangement, and relying on the representation of the defendants, he accordingly executed. The defendants immediately claimed the whole of the property, exclusively of any right of the plaintiff's, and at the same time, refused to advance the money, or to comply with any part of their proposal before stated. These acts of the defendants were all alleged to have been done fraudulently, and in pursuance of a conspiracy which they had formed against the plaintiff. The declaration then stated, that the defendants, in further pursuance of the same conspiracy, represented to the creditors of the plaintiff, that the defendants had fairly purchased the property aforesaid, and that the plaintiff was a bankrupt, and advised them to attach his estate immediately : in consequence of which, the whole of the plaintiff's store of goods, and other property, was attached, and sold at the post, at an immense loss ; his body also was arrested ; and bills of costs accrued against him, to the amount of $500. At the time the defendants ob-

tained the deed, the plaintiff had property more than suffi-
cient to pay all his debts, and was doing business to advan-
tage ; but by means of the wicked conduct of the defendants
aforesaid, he had been wholly deprived of his real estate,
and ruined in his business.

Plea of *Not guilty*. Verdict for the Plaintiff.

The defendants moved in arrest of judgment, first, gen-
erally, that the declaration was insufficient : Secondly, that
it was double, and embraced matters, which, by law, can-
not be joined in one declaration. This motion was over-
ruled.

On the trial, the plaintiff offered parol evidence of the
agreements respecting the land stated in the declaration,
which was objected to, and admitted. The plaintiff then
offered *Isaac Tomlinson* as a witness, to prove, that the de-
fendants had, by fraud, obtained the deed from *Bontecou*, and
now fraudulently held the property. He was objected to
by the defendant's counsel, 1. Because he had then pending
in court a *scire-facias* on foreign attachment, against the de-
fendants, as the debtors of the plaintiff, claiming the real
estate in question as a fund in the hands of the defendants,
out of which they were liable to the plaintiff's creditors :
2. Because *Tomlinson* then had, outstanding and due, two
mortgages on said estate to the amount of more than $2000 :
3. Because *Tomlinson*, before the commencement of the suit,
had taken a quit-claim deed of said estate from the plaintiff.
These objections were overruled by the Court, and the wit-
ness admitted.

In charging the jury, the Court said, that if the defendants
obtained the deed from *Bontecou* by fraud and falsehood, they
were liable in the action, though the agreement between
*Bontecou* and the plaintiff to re-convey the land in question
rested in parol, and depended on the honour of *Bontecou*.

1807.

BULKLEY
*v.*
STORER.

To these decisions of the Court, and their direction to the jury, a bill of exceptions was filed.

The errors assigned were,

1. That the Court overruled the motion in arrest.

2. That the Court admitted parol evidence to prove the agreements relative to the land as stated in the declaration.

3. That the Court admitted *Tomlinson* as a competent witness.

4. That the Court in charging the jury mistook the law.

*Ingersoll*, and *Staples*, for the plaintiffs in error.

The errors assigned in this record appear from the declaration, and a motion in arrest, and also a bill of exceptions filed.

The plaintiff below, now defendant in error, claims, that this declaration, though consisting of many parts, and embracing many subjects, different in their nature, yet presents but one cause of action—to wit, a wicked, and fraudulent conspiracy to ruin *Storer* in his business, as a merchant, and a mechanic. The parts of this conspiracy and scheme of ruin are—First, that *Bulkley* and *De Forest*, by a misrepresentation, purchased of *James Bontecou* a real estate, once belonging to *Storer*, but to which he then had no claim in law or equity ; but only a verbal promise of *Bontecou*, that he, *Storer*, should have a conveyance, when he paid so much money : Secondly, that *Bulkley* and *De Forest* agreed to loan *Storer* $ 2000, which he was much in want of, and which *Bulkley* and *De Forest* well knew, but afterwards wickedly refused to loan the money :—Thirdly, that *Bulkley* and *De Forest* told *Storer*'s creditors that he was a bankrupt, and that they had purchased his real estate :

Fourthly, that *Bulkley* and *De Forest* caused *Storer* to be attached, and thereby put to five hundred dollars expense : And fifthly, that *Bulkley* and *De Forest* agreed and conspired together to ruin *Storer* in his business, and break him up. To say nothing of the utter absurdity of such a conspiracy, upon the face of it ; and for the present, to pass over this gross attempt to rake together half a dozen causes of action in one declaration, which the pleader must know, could not, standing alone, avail a moment ; let us examine the first step of this pretended conspiracy.

1. It is alleged, that *Bulkley* and *De Forest*, knowing under what circumstances *Bontecou* held the real estate, on a pretence, that they had settled the arrangements with *Storer*, purchased it, and then refused to loan *Storer* money, and denied his claim.

Unless this capital starting point is granted, we think, *Storer* must agree, that the conspiracy must fall through.

But, how could *Storer* be permitted to prove this parol condition to the obsolute deed, by him given to *Bontecou ?* Is there a clearer position of law, than that there can be no parol condition to a deed ? This will not be controverted. But, it will be said, this parol agreement had been partly executed, because he took a deed from *Storer* ; and, therefore, they may prove it, to shew their interest, and to make out our conspiracy. But, we ask, what part execution of the parol agreement between *Bontecou* and *Storer* ? This is the agreement, which we say cannot be proved by parol ; and not the agreement which we are charged with having made with *Storer*. How has this agreement between *Bontecou* and *Storer*, that there should be a parol mortgage, been in part executed ? Is *Bontecou's* deed from *Storer* a part execution ? If so, every deed is in part execution of a parol mortgage ; and a parol mortgage may, therefore, always be proved.

But, it will be said, that the statute of frauds and perjuries provides, that no action in law or equity shall be brought on any agreement, &c. ; and that this action is not brought on any agreement. This certainly is not very conclusive reasoning. Not to ask on what this action is founded, let us inquire of the gentlemen, whether every action, which is so laid, as that it is necessary to prove a parol agreement relative to the sale of lands to support it, is not so far founded on that agreement ? Will the gentlemen shew the Court a case, in which the party was permitted to prove a parol agreement relative to lands, because the action was not founded directly on that agreement ? But this action is founded directly on this parol condition to the deed given to *Bontecou*. Strike this agreement out, and let it stand, that this was an absolute and unconditional estate in *Bontecou*, and where would be the fraud and conspiracy so much relied upon ?

But, it will be further said, that you, *Bulkley* and *De Forest*, being charged with this conspiracy, are not at liberty to make this objection. This argument was much insisted on, in the Courts below ; but no authority was produced. There is surely nothing in the statute, which prohibits those who are *parties* to parol agreements from proving them, but enables *third persons* to prove them. The statute is absolute, that no parol agreement shall be proved. Is it only for a man to cry " fraud," for the vilest purposes, and instantly be let loose from all legal restrictions—to ruin the fairest reputations of his neighbours ? It is very indifferent who offers to prove a parol agreement. No man may, if it relates to lands, except where it has been partly executed ; and then every person may. Suppose A. sells and deeds lands to B. but B. agrees verbally, that A. shall have the lands again, on paying so much money. C. knowing of this parol agreement, persuades B. to deed the land to him, free of every incumbrance, upon the promise of C. that he will fulfil the parol contract with A.—C. however refuses. Can A. sue C. in an action of fraud, and be permitted to prove this verbal agreement to support his action ? If he can, this is a

true position, that this void agreement between A. and B. is afterwards rendered valid by the fraud of C. a third person. But suppose A. should think best to contrive an action of conspiracy against B. and C. for the sale of this land in this manner. If the action of fraud against C. would lie, certainly, if B. was active, it would lie against both. And if this action would lie, and upon the plaintiff's principles it certainly must, then this consequence follows, that though so long as this case rests on the agreement only, no action will lie; but only add an allegation of fraud, or conspiracy, and this void agreement becomes valid. Such a magical effect have the words *fraud* and *conspiracy.* But if these magical words should not work an introduction of this evidence, the whole case is gone : this is the very pivot on which the whole machine is put in motion.

2. The declaration, we contend, is insufficient on two other grounds.

The first is, that it contains a *misjoinder* of actions. The answer to this exception, in the Court below, was, that *duplicity* cannot be taken advantage of, unless by special demurrer. This we admit ; but it is not easy to perceive what bearing it has on the point in discussion. A misjoinder of actions is a very different defect in a declaration from duplicity ; and it is as clear, that misjoinder of actions is a defect, which may be taken advantage of by general demurrer, or motion in arrest, as it is, that duplicity can be taken advantage of only by special demurrer. To have availed himself of this position, the plaintiff ought to have shewn, that what we point out as a misjoinder is mere duplicity.

Duplicity is alleging *in one count* in a declaration two distinct causes of action, which may, or may not be similar in their nature. If similar in their nature, it is mere duplicity. If different, it is not only duplicity, but also a misjoinder of causes of action.

W w w

A misjoinder of causes of action is where, in different counts, or in the same count, you allege, as a ground of recovery, two distinct causes of action, different in their nature, and requiring different pleas and judgment : As a bond and bill of exchange ; covenant and note of hand ; ejectment and assault and battery, &c. though in some cases, where the plea and judgment would be the same, you cannot join the causes of action, as assault and battery and trespass on the case, or trespass *quare clausum fregit*,—fraud and slander,—trover and assault and battery, &c.

Next let us examine this declaration, and see what it contains. The plaintiff begins by alleging, that the defendants agreed to receive a deed from *Bontecou*—loan the plaintiff $ 2000, for one year, and hold the real estate as security. This agreement, the plaintiff alleges, the defendants violated. The plaintiff also states, that the defendants, well knowing the plaintiff to be a merchant, and ship-carpenter, carrying on business largely, declared of and concerning the plaintiff, that he was a bankrupt, &c. Are not *fraud* and *contract* joined in these two counts? But it may be said, that the pretence of loaning money, and under that pretence taking a deed, was a *fraud* and *deceit*. For the present argument, suppose it is ; will that help the declaration ? Can a precedent be shewn, in which a count of *fraud* and *deceit* and of *slander* have been joined ? If these different torts may be joined in one declaration, all torts may be. (*b*)

But, it is replied, that this declaration really contains but one cause of action,—that there are not several distinct causes of action alleged,—but that each allegation is a part of one entire plan, *viz.* a wicked conspiracy to ruin *Storer* ; and that in the declaration, it is averred, that all the various acts and things done were in pursuance of a settled conspiracy to ruin *Storer*. This answer to our objection to this declaration, that it contains a misjoinder of actions, proceeds upon the ground, that we are right in the fact that this dec-

(*b*) 1 *Com. Dig. tit. Actions.* G.    2 *Root* 225, *Clinton* v. *Hopkins.*

laration contains these causes of action ; but that it is all well, because at the close of the declaration they have averred, that all was done in pursuance of a conspiracy to ruin *Storer*. This last allegation is the chain, which binds together the discordant materials of this declaration ; and is to be considered as a cover for the whole,—a *unique* character. This is unquestionably the only ground on which this declaration can be, for one moment, supported. We will, therefore, consider,

In the next place, whether the plaintiff himself has shewn any cause of action upon his own declaration. It having been shewn, that this declaration contains matters which cannot be joined in one declaration ; and, by the above answer to this objection, admitted ; we will attempt to shew, that the answer, that here is a conspiracy stated on this declaration, and therefore that *that* is the cause of action, and will save the declaration, is confounded. If this action cannot stand on the ground of *conspiracy*, it cannot stand at all.

What then is a conspiracy ? A conspiracy is where two or more conspire together to do some unlawful act to the injury of a third person, for which the law gives a remedy. (c) There must always be, at least, two defendants in an action of conspiracy ; but the act, the injury, or cause of action, is as entire, as single, as in any other case : The argument of the counsel for the defendant in error, proceeds upon the supposition, that by naming the *gravamen* of a declaration a *conspiracy*, and by making the averment in the declaration, that all was done in pursuance of a design or conspiracy, the pleader is at liberty to allege as many distinct injuries as he pleases ; because they were all in pursuance of a design to injure. But this is not so. The cause of action always is, and always must be, as single and entire in conspiracy, as in any other case. Two or more may conspire falsely to indict, to rob, assault,

(c) 5 *Vin. Abr.* 412.

or do any other single injury; but the injury remains as single, when done by two in pursuance of a conspiracy, as when done by one. The number of actors is different, but the injury is the same. To illustrate this position, suppose two or more should, in fact, sit down and determine, at all events, to ruin a third person, and should conclude, that they would get the person, of whom he purchased his house and land to give them a deed under some pretence ; and that they would immediately take possession, and cut down his orchards, and claim the land as their own ; that they would proclaim him a known bankrupt, and cause all his creditors to fall upon him ; that they would kill his horse, and burn his carriage ; that they would, when alone, assault him, and beat him blind ; that they would cause him to be indicted for forgery ; and that, to deprive him of all personal property, they would employ suitable decoys, and procure such maps as should induce him to purchase a county of Virginia land, and thereby get his money ; and, to complete his ruin, debauch his wife : And suppose they should accomplish all this in pursuance of the scheme thus formed, will any lawyer contend, that in a single action of conspiracy, he may state all these facts in a declaration, and recover? Where is the precedent for such a principle ? You can no more join different causes of action in a declaration for a conspiracy, than you can in any other declaration. Conspiracy embraces a single cause of action, and must relate to certain known subjects : A conspiracy is not predicable of such causes of action as you may join the defendants in without a conspiracy. If two join to assault and beat a third person, and do it, they cannot be either indicted, or sued, for a conspiracy, as such : Talk as much about a conspiracy as you please, and the action will yet remain a simple action of assault and battery. Allege that all was done in pursuance of a conspiracy, and it will not help it. If it would, this action might be changed from an action of trespass to trespass on the case.

Again, can a man, by alleging a conspiracy, join causes

of action, that could not be joined without that allegation? We ask for a precedent to shew, that a conspiracy is an exempt case.

If this declaration states a conspiracy, then it is a conspiracy to cheat in the purchase of real estate ; to do an injury, by agreeing to loan money, and then refusing ; to slander a merchant, and to cause him to be harrassed with prosecutions. And each is a separate cause of action, distinct in its nature, and cannot be joined with any of the rest.— Suppose two persons agree to slander another, and do it. It is a clear position, that two defendants cannot be joined in an action for slander ; and yet by alleging conspiracy, they may be joined, according to the argument for the defendant in error. If this declaration can be supported, all the successive injuries a man may have suffered from his unfriendly neighbour may be prosecuted in one action, by alleging a conspiracy. You may depart from all the known and appropriate forms of action adapted to each injury, and save yourself the trouble and expense of prosecuting different actions, and bring the whole together, by alleging, that all was done, with a design to injure, and by conspiracy. Every law book will evince, that a conspiracy is as much a single known injury, as any other. Could not *Storer*, in this case, maintain an action for the injury of getting the deed from *Bontecou ?* Also, on the agreement to loan 2000 dollars ? Also, for calling him a bankrupt ? And also, for procuring the suits against him ? And if he could, can he abandon the prosecutions adapted to each injury, and bring the whole together in one declaration ?

But it will be urged in support of this declaration, that the gist of the action is the fraudulent manner of procuring the deed from *Bontecou* ; and all the rest in the declaration is by way of damages. But this does not help the declaration. For it is a sound position, that you may never allege, by way of aggravating the damages, facts, which of themselves would support an action. If so, this would al-

ways be the method to avoid the objection of a misjoinder of actions. And further, another action might be brought for these very causes of action thus alleged by way of damages. A plaintiff can no more join two causes of action, which, in their nature, cannot be joined, by laying one of the *gist* of the action, and the other by way of damages, than in any other way.

Again, what *Storer* now claims as the *gist* of his action is no ground of recovery, nor does the declaration shew a ground of recovery. It will be admitted, that, if *Storer* was not *injured* in the purchase of the land from *Bontecou*, he cannot recover. It will also be admitted, that upon the face of this declaration, it appears, that *Storer* had, long before our purchase, given to *Bontecou* absolute quit-claim deeds of this estate. Of course, he had not in law, or equity, the least claim to the property. If he had no claim to the property, how could he be injured? He has just the same claim upon us, that he had on *Bontecou*, which, indeed, is none at all. It must be admitted, that while the land remained the property of *Bontecou*, he had no claim. Did his claim become better, by being thrown on us? Suppose we had purchased the land, and said nothing to *Storer*; would he then have had any claim? It must be admitted, that he would not. How, then, does *Storer* get his claim on us? Because we agreed with him, that if he would let us take a deed of a piece of land, to which he had no claim, either in law or equity, and of which we might lawfully have taken a deed, without saying a word to him, we would loan him two thousand dollars, &c. Now suppose this all true, of what injury does *Storer* complain? That we hold real estate, which he has a right to? This cannot be pretended. That we agreed to loan him 2000 dollars, and have refused. If so, where is the *consideration* of this agreement? And again, this has not yet been claimed to be an action upon an agreement to loan two thousand dollars; but an action of *fraud*. Nor may the plaintiff waive his contract, and sue for *tort*. A *tort* is never predicable of the non-

fulfilment of a contract. (d)  If a man takes a contract for
the fulfilment of an obligation, or a duty, he must, when
he claims the fulfilment, always rely on his contract.  Be-
sides, what *tort* is there in this case, without the contract ?
Lay the contract aside, and you lay aside all the claim the
plaintiff has.

But, it may be said, that perhaps *Bontecou* would have held
the land as a mortgage, and recognized the claim of *Storer* ;
and *Bulkley* and *De Forest* shall not substitute their con-
science for the conscience of *Bontecou*.   But when there is
in law no claim upon the conscience of either, how can it
be said, that we have substituted our conscience for that of
*Bontecou ?*  The objection, if it amounts to any thing,
amounts to this : We have no claim upon *Bontecou ;* but
you, by taking his place, have given us a claim upon you.
Suppose, by agreement with *Storer*, we had taken a deed ;
would he then have ever had a claim ?  If he would not, does
the fact, that we agreed, and then refused to perform the
agreement, give him a claim for the land ?

In every point of view, it is impossible, that *Storer* should
have a claim on *Bulkley* and *De Forest* for taking a deed of
property, to which he had no sort of claim, however fraudu-
lent *Bulkley* and *De Forest* might have conducted.

The cases of contingent interest are not applicable.
There a claim exists,—a right ; but one which may, or
may not, be realized.—Here, there is no right.

Further, this release deed, (no matter how it appears)
shews, that if *Storer* could divest himself of his interest,
it was gone before this action was brought ; and a strange
interest is that, which cannot be released.  Should it be said,
that this ought to have been pleaded, we answer, that this
is not a release by the plaintiff to the defendant.   We could
not plead it in bar.   By statute, we may give it in evidence.

(d) 8 *Term Rep.* 335.

1807.

BULKLEY
*v.*
STORER.

3. The Court erred again, in admitting *Isaac Tomlinson,* as a competent witness.

*Tomlinson* was offered to prove, that *Bulkley* and *De Forest* had acquired this property under such circumstances, as that they had no title, and of course that their deed was fraudulent. To this the defendants below objected. This objection arises upon a bill of exceptions.

That *Tomlinson* is deeply interested in the *question* on trial is admitted ;—on our part, it is also admitted, that the Supreme Court of Errors have recently decided, that an interest in the question merely shall not exclude a witness. What does *Tomlinson* claim of the defendants below, as the garnishees in the suit he is now prosecuting against them ? Does he not claim, that *Bulkley* and *De Forest* stand precisely in *Storer's* place, and hold the property as *Storer's* property, the same as though they had received no conveyance of the property ? This stands admitted by the bill of exceptions. And can *Bulkley* and *De Forest*, after the conveyance from *Bontecou* to them is set aside, by a judgment between them and *Storer*, ever set up this conveyance as good ? *Tomlinson* has, also, a mortgage deed of the premises, and, upon the back of that, a quit-claim from *Storer*, as appears by the bill of exceptions. *Tomlinson* is, therefore, claiming the property as his ; and it is manifest, that it is not his, unless this conveyance now in controversy is void. Is not *Tomlinson*, then, directly interested in the event of this suit ? Does not his claim in the suit mentioned, and his claim by virtue of these deeds, rest upon the event of this suit ? If the defendants below had succeeded in establishing their deed to be valid, what right would *Tomlinson* have had, by virtue of his quit-claim deed ?

But, it will be said, this judgment could never be used in the suit between *Tomlinson* and *Bulkley* and *De Forest ;* or in any suit which *Tomlinson* might bring against *Storer* for the land. As this was the great argument, which, it is under-

stood, induced the Court below to admit *Tomlinson*, we beg the patience of this Court, while we examine it particularly.

In the first place, we deny the position, that this judgment could never be given in evidence in the case of *Tomlinson* against *Bulkley* and *De Forest ;* and on a suit by *Tomlinson* for the premises, founded on his mortgage and quit-claim. The position as laid down, and applied, is begging the very question in debate. As a general rule, judgments cannot be given in evidence, except between the same parties ; but to this, as to most general rules, on the subject of evidence, there are many exceptions. In this case, would it not be competent for *Tomlinson*, in a suit against *Bulkley* and *De Forest,* for the possession of this land, if they should set up a title in themselves, to deny that they had any title by virtue of their deed, and to shew the judgment against them in favour of *Tomlinson's* grantor establishing the fact that the conveyance had been so adjudged ? If *Bulkley* and *De Forest* should object, that *Tomlinson* was no party to that judgment, might not *Tomlinson* say, but *you* were parties, and my grantors also ? Suppose A. makes a fraudulent conveyance of a piece of land to B. C. is a creditor to A. and attaches the land, has it set off to him on execution, and brings an action of ejectment against A. who remains in possession of the land. A. to shew, that the conveyance he made to B. is good, offers B. as a witness ; could he be admitted ? This is an adjudged point, that he could not be admitted ; and expressly on these grounds, because B. in that case, would be interested in the very property on trial, in the very title in question ; and because if C. should fail in that suit, he could never afterwards bring a suit against B. when he should take possession under the deed from A. If he should, it would be competent for B. to introduce the judgment between C. and A. shewing, that in that suit he had failed to establish his title. But here it is obvious, that it is admitting a judgment between different parties. Many other cases might be put, to shew, that *Tomlinson*, hereafter may avail himself of this very judgment.

X x x

But, secondly, suppose we admit, that the judgment could not be read in evidence except between the same parties ; does it follow, that *Tomlinson* is not so interested in this suit, as that he ought to be excluded ? A man may be interested in the event of a suit, when the judgment is not between the same parties. If the witness be interested in the *fund*, or very thing, or title, on trial, he shall not be a witness, if, by that decision, he will lose, or gain. Hence, an interest in the *fund* will exclude a witness. (e) So, in the case stated of a fraudulent conveyance where the very title is in question.

But, in this factorizing suit in favour of *Tomlinson*, does he not claim of *Bulkley* and *De Forest*, standing in the place of *Storer*, that they shall pay him, because they have the property of *Storer* ? And is not this the very question now in dispute, whether *Bulkley* and *De Forest* have the property of *Storer* ? Besides, does not the garnishee always stand on the foundation of the original debtor ? No man can fail to see, that *Tomlinson* has, in this case, just the same interest, that he has in the suit in his own favour against *Bulkley* and *De Forest* ; and he might, with just the same propriety, so far as his interest is concerned, be admitted in the latter as in the former case. If *Tomlinson* can be admitted, it is not because his interest is not sufficient in amount, and direct enough, to exclude him ; but because the rules of law are trammelled with *forms*.

*Daggett*, and *Smith*, (of New-Haven,) for the defendant in error.

The counsel for the plaintiffs in error argue in favour of a reversal on several distinct grounds.

1. *Tomlinson* ought not to have been sworn as a witness, and that for three reasons :

(e) 2 *Esp. Rep.* 735. *Powel* v. *Gordon.*

First, He had a suit depending in which similar questions were made.

Secondly, He had a mortgage of the property.

Thirdly, He has a release deed also.

We reply, that *Tomlinson* has no interest in the *event* of this suit. His release deed can only make him interested in the question.

His mortgage, if taken before the fraud was committed, could not be affected by it ;—if taken since, the judgment in this case cannot be evidence, in any suit regarding that mortgage. He is, therefore, a *competent* witness.

2. It is contended, that the declaration is multifarious, and bad.

If the complaint be, that it is double ; we reply, the objection comes too late ;—duplicity cannot be regarded after verdict, or even on a general demurrer, but can be reached only by a special demurrer. This answer is sufficient ; but we add, this declaration is *not* double. Duplicity is joining distinct causes of action, which cannot be joined, to enforce one entire, indivisible right. The facts here stated go to make up one cause of action ; they tend to prove the conspiracy, or the fraud. Some of them are laid by way of aggravation. Thus, in *Newman* v. *Smith*, (*f*) in an action of trespass for breaking and entering a house, an allegation, that the defendant beat the servants, &c. was holden good.

It is said again, that this is a misjoinder of action : Here is *tort* and *contract*.

We answer, a misjoinder is the joining two or more causes of action, which cannot be joined, as distinct and inde-

(*f*) 2 *Salk*. 642.

pendent grounds of recovery. Nothing of this kind appears on this declaration. The exception, which we are now considering, was probably suggested to the plaintiffs in error, by the case of *Clinton* v. *Hopkins*. (*g*) That was an action for a malicous prosecution, alleging, *inter alia*, that the defendant caused the plaintiff to be prosecuted for a felony in stealing a quantity of gold ; and to shew the aggravated nature of the charge, it was alleged, that the defendant had procured, on certain conditions, that he would not cause the plaintiff to be prosecuted. After a verdict for the plaintiff, upon a plea stating probable cause, the Court set it aside, and held, that the declaration was insufficient, because tort and contract were joined. This decision was soon expressly over-ruled, in the case of *Carpenter* v. *Buel* in this Court ; and had it not been, it would not be regarded as law, for it is in the face of plain principles. All actions against bailees embrace tort and contract ; and in the action for a malicious prosecution, the slander to the defendant, the expense of a defence, and imprisonment, or other corporal injury, constitute the grounds of damage. Surely, if the defendant in any action on the case for fraud, or other injury, has effected the wrong, by a breach of promise, this falsehood may be alleged, and proved. As to the principles which govern in actions for a malicious prosecution, or a vexatious suit, the law is most fully, and satisfactorily laid down, in *Jones* v. *Givin*, (*h*) *Savil* v. *Roberts*, (*i*) and *Sutton* v. *Johnstone*. (*j*)

3. The plaintiffs urge, that it appears by the release deed, that *Storer*, the now defendant, conveyed the land, concerning which he now claims damages, after the pretended injury, and before the action brought.—We answer,

First, This deed was not given in evidence to the jury ; it was not offered as a defence to the action ; but to disqualify *Tomlinson* from testifying. How, then, can the judgment be erroneous on that ground ?

(*g*) 2 *Root* 225.       (*h*) *Gilb. Law and Eq. Rep.* 185.
(*i*) *Salk.* 13.       (*j*) 1 *Term Rep.* 493.

Secondly, The conveyance is not a discharge of the plaintiff's action. A. injures the horse of B.; B. sells him; is he remediless? A. does a trespass on B.'s land; B. sells the land; still he can have his remedy. (*k*)

Thirdly, If this deed can have any effect, it will be a discharge, or an act of the plaintiff, whereby his cause of action is gone. If so, then it should have been pleaded, and could not have been given in evidence on the general issue.

4. The plaintiffs in error say, that the parol testimony ought not to have been received, because of the statute against frauds and perjuries.—Our answer is,

First, That statute prohibits the maintaining of *any suit upon any agreement*, &c. This is not an action upon an agreement; but an action on the case for a fraud.

Secondly, This agreement was executed on one part;— the defendants obtained a deed. This takes the case out of the statute. (*l*)

Thirdly, The defendants shall never allege their fraud to shield them. In 3 *Burr.* 1919, WILMOT, J. says, " The " statutes shall never be so turned, construed, or used, as to " protect, or be a means of fraud." All judges and commentators hold the same language.

Fourthly, If a defeasance is prevented by fraud, parol evidence may be received: So, if by mistake. This is the English law; and it was so decided in this Court, in the late case of *Sandford* v. *Washburn*. In *Roberts on Frauds* 102, 103, 1 *Vern.* 296, *Prec. in Chan.* 3, and 2 *Vern.* 506, are rules applicable to this point.

(*k*) 5 *Bac. Abr.* 167.
(*l*) *Kirby* 399, *Chapman* v. *Allen*.

Fifthly, This case proceeds not on the ground of agree-ment. The declarations, conversations, and acts of the de-fendants surely may be proved.

5. The next and only remaining point is, that *Storer* had no *legal or equitable* interest in this property ; and there-fore, could not have been injured.

First, If this be true, the defendants cannot urge it as a defence. A. holds a note barred by the statute of limita-tions, or void for usury, or a deed unstamped. B. takes them forcibly away. Can he defend this wrong, by shew-ing, that the plaintiff might not have recovered on these in-struments. An apprentice not indented is enticed away. Can he, who seduced him away, shew that fact to justify ? A bargain is in negotiation ; it is incomplete ; a stranger defeats it by a falsehood, to the injury of one of the parties ; is he to shield himself ?

Secondly, *Storer* had an interest in this land. If, the facts being true, *Storer* had brought this bill to redeem against *Bontecou*, before the defendants had got their deed, and the defendant to the bill, by his answer, had admitted their truth, the Court would have decreed a redemption. Shall, then, the now plaintiffs insist, that they will be pro-tected in a fraud, because *Bontecou might* have done the same ? Shall they take from *Storer* the right of appealing to *Bontecou's* conscience, and insist on his relying only on theirs ? *Storer* prefers the former.

He had, at least, a possibility, such as those have, who claim under contingent remainders, and executory devises. These interests, though wholly uncertain, are constantly regarded as property. 1 *H. Black*. 30.—2 *Fearne* 286.— 446—447—287—442—444. Here we see these interests alienable, and descendible, and transmissible, in other res-pects. Now, if a deed, or will, under which such an in-

terest was claimed, should be destroyed wantonly, will any one say, that a right of action may not exist?

Again, a prisoner indicted for forgery has not been allowed to say, that the paper forged could do no injury. It has been decided, that to forge a will of a *person living*, is felony. To forge a note without a stamp, a lease so loosely drawn as that, if genuine, it would be useless,—are felonies. (*m*)

It is said, however, if there be any interest of *Storer*, it is not defeated by this fraud upon our principles ; and therefore, he may now compel a redemption.

Be it so ; still we may affirm the contract, and go for damages, and the defendants shall not object.

We answer again ; if this be true to the extent urged, still we are not to be deprived of our remedy for the fraud. A. forges a deed against B ; B. may avoid the deed, and recover in case against A. for the forgery. (*n*)

It is also said, upon the face of the declaration, the injury was done to *James Bontecou*, if to any one ; and of course, *Storer* cannot recover.

We answer, *James Bontecou* is not injured. He has been paid his money : This is all he could justly claim. If the defendants have caused him to injure the plaintiff, he may maintain an action. (*o*)

We conclude, that this judgment may be vindicated on the broad principle of law, *viz.* that *he who does* any deceit to the *damage* of another, is liable in an action on the case for this deceit. This principle is laid down by *Comyns ;*

(*m*) *Leach's Cro. Ca.* 503, *(third edit.) Rex* v. *Cogan.* 2 *Stra.* 901, *the King* v. *Crooke.* 2 *M'Nal.* 484, *the King* v. *Lee.*
(*n*) 1 *Com. Dig.* 241. *Hob.* 237.
(*o*) *Carth.* 3, 4. *Roberts on Frauds* 524.

1807.

BULKLEY
*v.*
STORER.

it is recognized by all our elementary writers ; by our ablest judges ; (*h*) and is consonant with the soundest maxims of justice and morality.

BY THE COURT, unanimously,

The judgment was affirmed.

(*h*) 3 *Term Rep.* 51.   1 *East* 318.   2 *East* 92.

## Bulkley *v.* Starr.

### In the Court below,

JONATHAN STARR, GUY RICHARDS, NATHANIEL RICHARDS, GEORGE HALLAM, ROBERT HALLAM, JARED STARR, JANE STEWART, WILLIAM WINTHROP, JOSEPH HOWLAND, BENJAMIN BUTLER, and GEORGE D. AVERY, *Petitioners ;* CHAUNCEY BULKLEY, *Respondent.*

In the Supreme Court of Errors, a plea in abatement will not be received after the third day of the term.

Where it appeared, that some of the defendants lived out of the State, to whom no actual notice had been given, and on whom no

ON *Wednesday* of the second week of the term, *Goddard,* for the defendants in error, moved for leave to enter a plea in abatement, on the ground of defective service.

*Daggett,* for the plaintiff in error, contended, that it came too late, and could not be received.   In the *County* Courts, pleas in abatement are required *by statute*, (*a*) to be made before the impanelling of the jury ; which is on the third day of the term.   The Superior Court have adopted the same rule ; and though this Court have not expressly adopted any rule, the practice has always been to give in such pleas within the three first days of the term.   From the *na-*

(*a*) *Stat.* 342. *edit.* 1796

service had been made, otherwise than by leaving a copy with their attorney here ; and no plea in abatement had been entered in season ; the Court refused to erase the case from the docket.