## WOLCOTT *against* COLEMAN :

### IN ERROR.

An action
will lie in
favour of
one of two
joint cove-
nantees,
against the
covenantor,
for fraudu-
lently ta-
king and
pleading a
discharge
from the
other cove-
nantee, who
had assign-
ed his inter-
est in the
covenant,
and was a
bankrupt, of
which the
defendant
had notice.
Where
there are
several
counts in a
declaration,
some of
which are
good, and
others bad,
and the
plaintiff ob-
tains a gen-
eral verdict,
with entire
damages, it
will be pre-
sumed that
the verdict was given, and that the damages were assessed, upon the good counts only.

THIS was an action on the case, by one of two covenan-
tees, against the covenantor, for fraudulently taking, and
pleading a discharge from the other covenantee, who had
assigned his interest in the covenant, and was a known bank-
rupt. Several questions arising out of the same cause, have
heretofore been submitted to the consideration and decision of
this Court, first, on a motion, and afterwards on a petition,
for a new trial.(*a*) There was also a former suit between
the same parties, for the same cause of action, which was
brought up, on a writ of error, and was here decided upon
its merits.(*b*) The declaration in the present action was
copied, with little variation, from the one in that ; but as one
of the points now made was not agitated before, and as the
principle on which the right of action depends has been deem-
ed, by the Court, of sufficient importance to induce them to
revise their former decision, it seems proper to give a more
extended view of the declaration, than has yet been given.

The declaration consisted of five counts. The first was
as follows : " That on or about the 4th of *September,* 1795,
the plaintiff and *John Taylor* of *Northampton,* in the common-
wealth of *Massachusetts,* entered into a certain contract in
writing with the defendant, bearing date on the same day and
year last aforesaid ; which contract was duly executed by
said parties, under their hands and seals ; and the same con-
tract was, and is, of the tenour following, *viz.* " This inden-
ture, made in the city and county of *Hartford,* on the 4th day

(*a*) See 1 *Conn. Rep.* 285. and 375.        (*b*) See 4 *Day,* 6.

of *September* 1795, between *William Coleman* of *Greenfield*, and *John Taylor* of *Northampton*, in the county of *Hampshire* and commonwealth of *Massachusetts*, of the one part, and *Alexander Wolcott*, of *Windsor*, in said *Hartford* county, of the other part, WITNESSETH,

That whereas the said *Alexander* hath discovered, that there is within the state of *Virginia*, *viz.* within the *Louisa* forks of the river *Sandy*, and to the north-eastward of the main branch thereof, and the *Cumberland* mountain, or great *Laurel-Ridge*, a valuable tract of land, containing, by estimation, fifteen hundred thousand acres ; which lands are supposed to be unlocated, and the property of the said state of *Virginia* : And whereas the said *William* and *John* are desirous of obtaining a good title to 200,000 acres, part of said tract of land ; and being also desirous of the aid of the said *Alexander* in procuring said title : It is, therefore, for the purposes aforesaid, mutually covenanted and agreed, by and between the said parties, as follows, *viz.* The said *William* and *John*, in consideration of the covenants and agreements by the said *Alexander* herein-after entered into, do covenant to and with the said *Alexander*, that they will advance and pay to him, on or before the 6th day of *September* instant, three cents, lawful money, on each of said 200,000 acres ; and the said *William* and *John* further covenant to and with the said *Alexander*, that they will pay the said *Alexander*, on or before the 1st day of *January* next, one cent more on each of said 200,000 acres, and also, that on or before the 1st day of *January*, which shall be in the year of our Lord 1797, the said *William* and *John* will pay unto the said *Alexander* the further sum of three cents for each of said 200,000 acres ; and also the said *William* and *John* further hereby covenant, that on or before the 1st day of *January*, which shall be in the year of our Lord, 1798, they will pay to the said *Alexander* the further sum of three cents for each of said 200,000 acres, with the lawful interest from and after the 1st day of *January* 1797. And the said *Alexander*, in consideration of the covenants and agreements by the said *William* and *John* in this indenture made, do hereby covenant and agree to and with the said *William* and *John*, that he will forthwith proceed to the city of *Richmond* in said state of *Virginia*, and there diligently and faithfully make all necessary enquiries relative to said tract of land, and if it shall appear

*Hartford,*
November,
1817.

Wolcott
*v.*
Coleman.

*Hartford,*
November,
1817.

Wolcott
*v.*
Coleman.

that said tract of land hath not been located, nor purchased of said state, by any other person, then the said *Alexander* will proceed immediately to locate and to and for said *William* and *John*, 200,000 acres, part of said tract of land first mentioned, and will also, as soon as may be, procure a grant or patent therefore from said state of *Virginia*, with, and according to the forms prescribed in and by the laws of said state of *Virginia*, in such case provided, and under the seal thereof, to the said *William* and *John*, or to such person or persons as the said *William* and *John* shall legally author- ize and appoint to receive said grant, on or before the first day of *April* next ; which location and survey, and the ex- pense attending the same, shall be made and completed, and said grant or patent issue, at the sole expense or charge of the said *Alexander*, so that said lands and the procuring of said title as aforesaid, shall cost the said *William* and *John* no more than said ten cents for each acre. And in case the said *Alexander*, on his arrival in said state of *Virginia*, shall find that part of said tract of land hath already been located, and the said *Alexander* cannot obtain the same of said state, in such case the said *Alexander* covenants to procure for said *William* and *John*, such title as is above described to such part of said remaining and unlocated tract, as shall be in the proportion to said part unlocated, as said 200,000 acres is to 1,500,000 acres ; but in case the said *Alexander*, on his arrival in said state of *Virginia*, shall find that the whole of said tract is located, and he cannot obtain it, in that case the said *Alexander* covenants to and with the said *William* and *John*, to return to them, as soon as it can be done with conve- nience, the whole of said money, by said *William* and *John* advanced, as aforesaid, without deduction ; and in that case, it is further mutually agreed and understood, that the said *William* and *John* shall not pay to the said *Alexander*, any of the subsequent sums by the said *William* and *John* in this indenture covenanted to be paid, but shall be therefrom wholly excused and exonerated. And it is further mutually agreed and understood, that in case part only of said 200,000 acres of land shall be by said *Alexander* procured for said *William* and *John*, on the sums above specified, in that case the said *William* and *John* shall pay to the said *Alexander*, only so much of said several sums as shall amount to said rate of ten cents per acre ; and the same shall be paid at the times,

and in the manner, above specified. And it is also further agreed and understood by said parties, that in case said *Alexander*, on his arrival in said state of *Virginia*, shall find said tract of land in part or wholly unlocated, and shall proceed to locate and survey the same to the said *William* and *John*, in manner as aforesaid, and the said *William* and *John* shall neglect or refuse to pay the said *Alexander* said sum of one cent for each acre of said land, which shall eventually be procured for said *William* and *John* as aforesaid, on or before said 1st day of *January* next, covenanted to be paid to the said *Alexander*, by the said *William* and *John*, in that case the said *Alexander* shall be at liberty, at any time within one month from and after said 1st day of *January* next, to repay to the said *William* and *John* the whole of the money by them advanced to the said *Alexander* as aforesaid, with lawful interest thereon from the time advanced to the time of repayment; and thereupon the said *Alexander* shall be wholly excused and exonerated from any other or further claim, which the said *William* and *John* have, in virtue of, or, on account of, the covenants in this indenture. And to bind ourselves to the due and faithful performance of all and singular the covenants and agreements in this indenture, made, and by each party respectively to be kept and performed, according to the true intent and meaning of said parties, we have hereunto interchangeably affixed our seals, and subscribed our names, the day and year first above written.

In presence of              *Alexander Wolcott.* [**L. s.**]
   *Nathaniel Terry,*       *William Coleman.* [**L. s.**]
   *Hezekiah Huntington.*    *John Taylor.*"   [**L. s.**]

" And the plaintiff avers, that no copartnership connexion ever subsisted between the plaintiff and said *John Taylor,* and that though jointly obligated for the payment of the sums stipulated to be paid to the defendant in the above recited contract, yet the said *John Taylor* and the plaintiff agreed to hold, each for himself, an equal part or portion of the lands that should be eventually obtained by said contract, to be sold and disposed of for the separate benefit of each, and not for their joint advantage.

" And the plaintiff further says, that in pursuance of the above recited contract or indenture, he and the said *John Taylor* paid to the defendant, on or about the 4th day of *September*, 1795, the sum of 6000 dollars, in said agreement

*Hartford,*
November,
1817.

Wolcott
*v.*
Coleman.

Wolcott
*v.*
Coleman.

stipulated to be paid, by him and the said *John Taylor,* on that day, in full of said stipulated sum of 6,300 dollars, which was the proper money of the plaintiff.

"And the plaintiff avers, that on or about the 12th day of *November,* 1795, the said *John Taylor* did, by a writing, under his hand, by him well executed, relinquish, assign and make over to *Eliel Gilbert* of said *Greenfield,* and to his heirs, executors, administrators or assigns, all his right, title, interest and claim in and to the above mentioned and recited contract, meaning thereby to assign the one moiety thereof. And the plaintiff, on the same 12th day of *November,* and at the same time the said *John Taylor's* assignment was made to the said *Eliel Gilbert* as aforesaid, did also assign and make over to the said *Eliel Gilbert,* by a writing under the hand of the plaintiff, by him well executed, all his right, claim and interest in and to said contract above recited, except as to one third part of said contract, which one third the plaintiff retained to and for his own use ; by virtue of which assignment of the said *John Taylor* and the plaintiff, made to the said *Eliel Gilbert,* on said 12th day of *November,* 1795, as aforesaid, (which assignments were entered upon said original contract, or a copy thereof,) the said *Eliel Gilbert* became vested with, and legally possessed of, all the rights, title and interest, which the said *John Taylor* and the plaintiff had in and to two thirds of said contract above recited ; and the said *John Taylor,* by his said assignment to the said *Eliel Gilbert,* divested and dispossessed himself of all the right, title and interest, which he had, or ought to have, in or to said contract, or in consequence of the covenants entered into, in and by said contract, or the monies paid upon said contract above recited ; of which assignments, made by the said *John Taylor* and the plaintiff to the said *Eliel Gilbert,* in manner and form as aforesaid, the defendant, on or about the 1st day of *January,* 1796, had full knowledge, and acquiesced therein, and hath since settled with said *Gilbert,* and paid him, to his full satisfaction, for the said two third parts of said contract assigned to the said *Eliel Gilbert,* by the said *John Taylor* and the plaintiff as aforesaid, and hath been discharged therefrom, by the said *Eliel Gilbert,* by a receipt in writing, well executed by the said *Eliel Gilbert* to the defendant, in full for all the said right and interest which the said *Eliel Gilbert* had in and to said contract as aforesaid.

*Hartford,*
November,
1817.

Wolcott
*v.*
Coleman.

" And the plaintiff further says, that on or about the 2nd day of *January,* 1796, he paid to the defendant a further sum of 500 dollars, on account of the one third part or share of the above recited contract retained and owned by the plaintiff as aforesaid ; and that, on or about the 8th day of *April,* 1796, the plaintiff paid to the defendant a further sum of 458 dollars, 50 cents, on account of said one third part of said recited contract retained and owned by the plaintiff as aforesaid ; which sums paid to the defendant, on said 2nd day of *January,* and on said 8th day of *April,* as aforesaid, the defendant received of the plaintiff, to be applied in part, and on account, of said recited contract accordingly.

" And the plaintiff further states, that the defendant never did procure any title, grant or patent from the said state of *Virginia* of the lands in said contract or agreement mentioned, or for any part thereof, nor offer to the plaintiff or said *John* any title, grant or patent thereof, nor to any person or persons by them appointed, or authorized to receive the same ; said lands not having been the property of the said state of *Virginia,* at any time since the date of said original contract, nor since the arrival of the defendant in said state of *Virginia,* which was on or about the 1st day of *October,* 1797. And the plaintiff hath wholly failed to perform the covenant in that behalf by him made with the plaintiff and the said *John Taylor,* in and by the contract or agreement before recited, in consequence of which (the defendant's failure to perform his covenants as aforesaid) the plaintiff omitted to pay the defendant any further sums of money, on account of the said contract or agreement than those which the plaintiff hath herein before set forth.

" And the plaintiff further states, that in consequence of the defendant's said failure to perform the covenants on his part to be performed in said contract or agreement, the defendant became liable to repay to the plaintiff, (whom the defendant knew to be the true and lawful owner of one third part of said contract) the moneys which had been advanced or paid upon the plaintiff's said one third part or share in said contract ; which moneys amounted to the sum of 2958 dollars, 50 cents, which sum the defendant was in law and in equity bound to pay to the plaintiff, on or about the 1st day of *May,* 1796.

" Wherefore, the plaintiff did, on or about said 1st day of *May,* 1796, and at divers other times since said 1st day of *May,* 1796, make repeated application to the defendant, and demanded of him to repay to the plaintiff said sum of 2958 dollars, 50 cents, paid and advanced to the defendant upon the plaintiff's said part or portion of said contract as aforesaid, together with the interest of said sum ; and the defendant, on or about said 1st day of *May,* 1796, when thereto requested as aforesaid, neglected to repay to the plaintiff said sum of 2958 dollars, 50 cents, or any part thereof, and hath at all times since said 1st day of *May,* down to the present time, refused to repay to the plaintiff said sum ; and the whole of said sum of 2958 dollars, 50 cents, together with the interest thereon since said first day of *May,* 1796, is still due from the defendant to the plaintiff.

" And now the plaintiff further states, that on or about the 15th day of *February,* 1801, the defendant, knowing the premises, and conscious of the rights accruing to the plaintiff therefrom, did apply to the defendant at said *New-York,* and requested the plaintiff to receive land not comprised within said contract of the defendant, in satisfaction for the money paid upon the plaintiff's one third part of the contract above recited, with which proposition or request made by the defendant to the plaintiff on said 15th day of *February,* 1801, as above, the plaintiff omitted and refused to comply.

" And the plaintiff further states, that on or about the 14th day of *May,* 1801, the said *John Taylor* being then a bankrupt, and who hath at all times since the 14th day of *May* 1801, been totally insolvent and unable to pay his debts, and who, at that time, owned no part of the above recited contract, having parted with all his right, title and interest therein to said *Eliel Gilbert,* as is above stated ; which state of bankruptcy, and the said *John Taylor*'s assignment to the said *Eliel Gilbert,* the defendant, on said 14th day of *May* 1801, well knew ; yet the premises notwithstanding, the defendant, for the purpose of defrauding the plaintiff of the sums advanced to the defendant, on the plaintiff's part of said contract as aforesaid, and the interest due thereon, afterwards, on or about said 14th day of *May,* 1801, did apply to the said *John Taylor,* and for the fraudulent purpose aforesaid, did procure the said *John Taylor,* by a writing under

*Hartford,*
November,
1817.

Wolcott
*v.*
Coleman.

his hand, well executed, to remise, release and forever discharge the defendant of and from the contract aforesaid, and from all manner of actions, cause and causes of actions, suits, bills, bonds, writings, reckonings, sums of money and controversies whatever, from the beginning of the world to that day ; which release, executed by the said *John Taylor* to the defendant, on said 14th day of *May*, 1801, released and discharged the defendant of and from his covenant contained in said contract executed by the defendant, said *John Taylor* and the plaintiff, as above recited ; which said release, procured for the purpose and in the manner aforesaid, the defendant has since pleaded in bar of an action commenced in the county of *Middlesex*, in the plaintiff's name and the name of said *John Taylor*, against the defendant, on the covenants of said original contract, as above recited, for the repayment of the above named sum of 2958 dollars, 50 cents, advanced to the defendant as aforesaid, for the benefit of the plaintiff, on his third part of said contract retained and owned by the plaintiff as aforesaid, and for the interest due to the plaintiff thereon ; which action, commenced by the plaintiff, in his own name, and the name of the said *John Taylor* as aforesaid, the plaintiff, in consequence of the defendant's said plea in bar, pleaded by the defendant as aforesaid, withdrew, and judgment was rendered up against him for the defendant's costs in said action ; and thereby the plaintiff has been unjustly defeated in his right of action on the defendant's covenant in said original contract, above recited, in his own name and the name of the said *John Taylor*, and also much injured by the payment of costs in said suit, and delayed in the recovery of his just dues from the defendant ; all which has happened to the plaintiff in consequence of the defendant's fraud and collusion in procuring the said discharge or release from the said *John Taylor*, in the manner and for the purpose aforesaid, and in his pleading the same in bar of the plaintiff's action as aforesaid."

The second count, instead of reciting the contract, referred to it as recited in the first count, alleging, that " the plaintiff and the said *John Taylor* entered into a certain other contract in writing with the defendant, bearing date on the same day and year with the covenant last aforesaid, which contract was duly executed by said parties, under their hands and seals, and, in and by the same, the parties aforesaid made and en-

*Hartford,*
November,
1817.

Wolcott
*v.*
Coleman.

tered into the same covenants contained in the contract or covenant recited as aforesaid." This count also averred, that the original contract was in the hands of *Taylor*, who refused to deliver it up, or to give his deposition concerning it.

The third count alleged, that " the plaintiff and said *John Taylor* entered into a certain other contract in writing with the defendant, bearing date on the same day and year last aforesaid, which contract was duly executed by said parties, under their hands and seals, the counterpart whereof is in the hands of the defendant, and the same was *in substance* the same, as that herein before recited, but did contain, among other things, a covenant or agreement, on the part of the defendant, to repay to the plaintiff and said *John Taylor*, the moneys to him by them advanced, in pursuance of said covenants, as soon as the same could conveniently be done, after the defendant should find, on his arrival in said *Virginia,* that the said land was located by others, or could not be by him obtained ; which last mentioned contract was delivered to said *Taylor*, and has been lost by time and accident."

The fourth count averred, that " the plaintiff and said *John Taylor* entered into a certain other covenant in writing with the defendant, bearing date on the 4th day of *September* 1795, which covenant was duly executed by said parties, under their hands and seals, the counterpart whereof is in the hands of the defendant, and the same covenant was and is *substantially* the same as the one herein before recited, and has become lost, by time and accident."

The fifth count averred, that " the plaintiff and said *John Taylor* entered into a certain other covenant in writing with the defendant, bearing date on the 4th day of *September,* 1795, which covenant was duly executed by said parties, under their hands and seals, the counterpart whereof is in the hands of the defendant ; and the same contained the several covenants and stipulations by the parties aforesaid, alleged to be contained in the covenant first aforesaid, and was *in substance* the same as the one herein first before recited."

At the close of the declaration, there was a general allegation of damages, in these words : " All which wrongful and fraudulent doings of the defendant are to the plaintiff's damage, ten thousand dollars, to recover which," &c.

The defendant pleaded *not guilty;* and the jury found a general verdict for the plaintiff, with 5978 dollars, 91 cents, damages. This verdict being accepted, and final judgment rendered thereon, the defendant brought the present writ of error.

*Daggett* and *N. Smith,* for the plaintiff in error, contended, 1. That no good cause of action was shewn, in any count of the declaration. If two men take a covenant, they are, as to that particular transaction, invested with the same powers as copartners have over their debts and credits. 18 *Vin. Abr.* 303. n. *Matthews* v. *Thomas & al.* 18 *Vin. Abr.* 304. *pl.* 18. In the former case between these parties, (*Coleman* v. *Wolcott,* 4 *Day* 6.) the court regarded it as one in which an assignee may maintain an action against the assignor for fraudulently giving a discharge ; (4 *Day* 28.) but the plaintiff is not standing here as an assignee. He claims as an original joint covenantee with *Taylor,* who gave the discharge. Had *Coleman* and *Taylor,* after the assignment to *Gilbert,* discharged *Wolcott,* so as to cut off *Gilbert,* their assignee, the case would have been analogous, and the argument would have had some weight.

2. That at any rate, those counts in the declaration, which neither recite the contract, nor state it according to its legal effect, are bad. Each count must contain a good cause of action, independent of the other counts. Several counts in one declaration are as distinct, as though they were in separate declarations.

3. That as the verdict was entered generally upon all the counts of this declaration, with entire damages, if any one of the counts is bad, it is a fatal objection, and the judgment is erroneous. *Onslow* v. *Horne,* 3 *Wils.* 177. 185. *Grant* v. *Astle, Doug.* 722. 730. 2 *Wms. Saund.* 171. *b.* n. 1 *Chitt. Plead.* 394. This rule is founded in good sense ; for in such case, the damages may have been assessed upon the bad count or counts. In criminal cases, the reason does not apply, because the court, who inflict the punishment, can always adapt their sentence to the good counts only ; and therefore, the rule is different. 1 *Chitt. Crim. Law,* 249.

*Sherman* and *Staples,* for the defendant in error, insisted, that the question as to the right of action, was settled in

*Hartford,*
*November,*
*1817.*

Wolcott
*v.*
Coleman.

the former case; (*Coleman* v. *Wolcott,* 4 *Day,* 6.) the first count of this declaration being a transcript of that. But waiving, for argument's sake, the authority of that decision, they contended that the plaintiff had sustained an injury, by the wrongful acts of the defendant, to the full amount of the money which he might otherwise have recovered on the covenant; and that he is entitled to redress in an action at law.

2. That if the first count be good, the others are equally so, as the latter expressly refer to the contract as recited in the former. 1 *Chitt. Plead.* 397.

3. That admitting one of the counts to be bad, this, by the established law of *Connecticut,* is not a ground of reversing the judgment, if there be any good count to which the verdict may be applied. The *English* rule has never been adopted here. *Lewis* v. *Niles,* 1 *Root* 433. Even in *England,* it has been regarded as an " inconvenient and ill-founded rule;" and its existence has been " exceedingly lamented," by their ablest judges. *Doug.* 730. It is there confined to civil cases, and does not hold in criminal prosecutions. In holding, that where there are some counts good, and others bad, a general verdict will be supported by the good counts, our courts are supported by respectable decisions in the sister states. *Neal* v. *Lewis,* 2 *Bay,* 204. *Neilson* v. *Emerson,* 2 *Bay,* 439. *Roe* v. *Crutchfield,* 1 *Hen. & Munf.* 361.

SWIFT, Ch. J. This record presents the same question which has been decided in a former suit between the same parties; and though it is generally sufficient to say, that the same question has been settled by a prior decision of the Court, yet I have been willing to hear the same point discussed again, with a determination to change my opinion, if I did not find it supported by general principles, and analogous cases.

The authorities on which the counsel for the plaintiff in error have chiefly relied, are the following: *A.* was bound in a statute-staple to *B.* and *C.*, and after *C.* released to *A.* all actions, accounts, and recognizances, for which *B.* brought a *subpœna* against *C.* and *A.*, because *A.* had notice that the estate was made to the use of *B.*, and so a fraud in *A.* But because *C.* might have troubled *A.*, and it is lawful for every one to aid himself, therefore *A.* was discharged, and the *subpœna* stood against *C.* 18 *Vin. Abr.* 303.

A debt was owing to a testator, who, by his will, made *B.* and *C.* executors, and devised the debt to *D.* *B.* and *C.* proved the will, and released the debt. *D.* brought his bill against the executors and debtor, to be relieved against the release, charging them with practice, &c. The defendants pleaded this release; and upon arguing it, the plea was allowed, and the bill dismissed. 18 *Vin. Abr.* 304.

*Hartford,*
November,
1817.

Wolcott
*v.*
Coleman.

There is a material distinction between those cases, and the present. Here was no pretence or allegation, that the releasors were insolvent: there was, then, a clear and effectual remedy against them, and there was no necessity of calling on the releasees, who had been legally exonerated from the debt. But the ground of the claim in this case, is the insolvency of *Taylor*, a fact well known to *Wolcott*, when he received the release. The cases in *Viner*, then, are not *ad idem.*

It is contended by the plaintiff in error, that in the present case, there were two joint covenantees, who had a right to release the covenant in law and equity; that *Taylor* could prevent *Coleman* from putting the covenant in suit, or withdraw the suit; that *Wolcott*, by the terms of the contract with *Coleman*, could pay the whole demand to *Taylor*; and that a man could not commit a fraud in fulfilling a contract according to the terms agreed to by the party himself: that if *Taylor* had refused to suffer *Coleman* to make use of his name, he could have had no remedy in law or equity; and as *Taylor* had such an entire controul over the covenant, it was not an injury to *Coleman* to take a release from him, because it released no right which *Coleman* could ever have made available in law or equity. But I should question the correctness of this doctrine. It appears, that *Taylor* had assigned his whole claim to *Gilbert*, and was a bankrupt; which facts were known to *Wolcott*. Under these circumstances, if *Taylor* had not released the covenant, and had persisted in his refusal to permit *Coleman* to make use of his name to recover the demand out of *Wolcott*, and *Wolcott* had refused to pay it, *Coleman* could have applied to a court of equity, and have obtained relief against *Wolcott*, on the ground that he had a just and lawful claim, without any remedy at law. For it is a part of the peculiar jurisdiction of a court of equity to furnish relief where there is a lawful claim, and no lawful remedy. *Mitford*, 105. And in this case, it

*Hartford,*
November,
1817.

Wolcott
*v.*
Coleman.

is perfectly clear, that *Coleman* had a just and lawful claim against *Wolcott,* which he could not enforce at law, by reason of the fraudulent conduct of *Taylor.* He could, then, have applied to a court of equity, and have obtained relief, had not *Wolcott* procured the release. Here, then, was a violation of a right, that could have been made effectual. It must, then, be an actionable injury.

But let this point be as it may, the case of *Bulkley* v. *Storer,* in error, 2 *Day,* 531. is a direct authority to support this action. In that case, *Storer* had given a deed of land to *Bontecou,* on his parol agreement to reconvey on payment of the money for which it was pledged. *Storer* had no right which he could enforce in law or equity : he relied solely on the honour of *Bontecou :* and the court decided, the obtaining of a deed, by the defendants, from *Bontecou,* by fraud, by which he was prevented from fulfilling his agreement, was an injury for which an action could be sustained. In this case, *Coleman* had a claim, founded in justice, on *Wolcott,* for a certain sum, by virtue of a covenant made jointly with him and *Taylor.* Though he could not prosecute it at law, without the consent of *Taylor,* and joining him in the suit ; yet by his consent, he could have done it. If *Wolcott* had not interfered, it can never be known but *Taylor* would have permitted him to pursue his remedy on the covenant, in a joint action. It is altogether probable he would have done it ; at least, there was a possibility he would have done it : that possibility was defeated by the release. Though *Coleman* could not have enforced his right, by a suit in law or equity, neither could *Storer* ; yet both had a claim equally founded in justice, which might possibly have been realized : if it was an actionable injury to defeat one, it was the other. In the present case, *Taylor* did permit *Coleman* to bring a suit on the covenant in their joint names, and never controuled it. The action was defeated by *Wolcott's* pleading the release in bar. This makes it evident, that the right of *Coleman* was not destroyed by the refusal of *Taylor* to permit him to use his name in a suit on the joint covenant, but by the act of *Wolcott* in procuring and pleading the release.

The case, also, of an assigned note not negotiable, is, in all respects, analogous. The promissor has a legal right to pay the money to the assignor, and his release is valid ; yet in truth and justice, the money belongs to the assignee, and

if the promisor, after notice of the assignment, and the bankruptcy of the assignor, pays the money to him, he does an act by which he defrauds the assignee of a just debt : and though he may have a legal right to make such payment, and the note becomes thereby discharged, yet equity, on the ground that it is wrong to exercise a legal power to defeat a just claim, has interposed, and compelled him to pay it to the assignee ; and this principle was afterwards recognized at law. The wrong consists in knowingly paying to one man, money belonging to another, by which he is subjected to the loss of it. And the law, on the ground that for every wrong there is a remedy, gives a right of action.

So in this case, it appears from the facts found by the jury, that *Wolcott* knew the money due on the covenant belonged to *Coleman,* and that *Taylor* had assigned all his part. He also knew, that by paying it to *Taylor, Coleman* would lose the whole, as *Taylor* was a bankrupt. Now, in such case, nothing can be clearer than this, that it was the duty of *Wolcott* to pay this money to *Coleman ;* that it was right, and just, and proper, that he should do it : that it was wrong to pay it to *Taylor,* or to take his release without paying it ; because it prevented *Coleman* from receiving a just debt. Though he may be said to have a legal right to pay it to him, yet *in foro conscientiæ* it could no more be justified than in the case of an assigned note. All the difference is, that *Coleman* was joint covenantee, and not assignee ; but after *Taylor's* assignment of all his share, the remaining part was, in equity, the sole property of *Coleman,* as much as a note becomes the equitable property of the assignee by assignment. There cannot, therefore, in point of principle, be the shadow of a difference between the two cases.

There is, then, no new principle established in this case. It is only applying a principle previously established, in other cases, on mature and deliberate consideration.

As to the other question, it may be remarked, that though in *England* the rule has prevailed, that where there are several counts in a declaration, and a general verdict is found, if any of the counts are bad, the verdict shall be set aside, because it cannot be known, that the damages were not assessed on the bad counts ; yet in this state the practice has been different ; and it has ever been considered to be the rule, that if any of the counts are good, it shall be presumed the

*Hartford,*
November,
1817.

Wolcott
*v.*
Coleman.

damages were assessed on those counts, and the verdict shall stand. The most eminent jurists in *England* have lamented that the rule was ever established there ; as verdicts have often been set aside upon mere technical objections. As we have experienced no inconvenience from our practice, it would be strange for us to alter it, and borrow a rule from a country where its existence has been regretted. In a case, where there are good and bad counts in a declaration, if the defendant wishes to question the sufficiency of any of them, verdicts can be taken on each count separately, which will give him an opportunity : and unless such reason should exist, it will be found most convenient, in practice, to allow the verdict to be given, generally, on all the counts, where they are for the same thing.

I am of opinion that the judgment of the superior court be affirmed.

In this opinion the other Judges severally concurred, except GODDARD, HOSMER and GOULD, Js. who gave no opinion, having been concerned as counsel in the cause.

Judgment affirmed.